## MICHEL *v.* HER HUSBAND.

A vendee of property cannot oppose its seizure under a *fi. fa* at the suit of a party having a privilege and mortgage on it, and require the latter to resort to an hypothecary action, or to an action of nullity, where his purchase was made after the seizure, and his vendor could not have maintained such an opposition.

APPEAL by the plaintiff from a judgment of the Parish Court of New Orleans. *Maurian*, J.

The judgment of the court was pronounced by

SLIDELL, J. The record in this case exhibits a mass of confused and irregular proceedings, which we have carefully examined, but shall not undertake to detail in full. We shall refer only to such of them as are necessary to the decision of this controversy.

It appears that in the suit of one *Roy* against *Michel*, the present plaintiff's husband, judgment was obtained against *Michel*, and an execution issued, under which a slave of *Michel's* was seized and sold by the marshal of the City Court. Pending the seizure, *Mrs. Michel* obtained a judgment against her husband, with mortgage and privilege for dotal rights, which judgment was registered before the marshal's sale. The return of the marshal upon the *fi. fa.*, and his deed, exhibit an adjudication of the slave to *Roy*, the plaintiff in the execution. But it is shown that in reality the bid was made by, and the adjudication was made to, *A. Dreux*, professing to act for account of *Roy*, who was not present,

and is not shown ever to have authorized *Dreux* to make the purchase. The *price* of the adjudication was $510. The marshal's return and his deed both declare, after reciting the certificate of registry of *Mrs. Michel's* judgment, that, the purchaser *(Roy)* has retained in his hands the sum of $493,80, the amount of the privilege existing on said slave in favor of defendant's wife, in order to meet the payment of the same, the purchaser paying the balance to the marshal in ready money. It is admitted by *Dreux* that, since the sale, the slave has always been out of *Roy's* possession. It is proven clearly and conclusively by the sheriff of St. Bernard, where *Roy* lives, and to which parish *Mrs. Michel* had subsequently issued an execution, that, upon application being made to *Roy* for the slave, in order that a seizure might be made under the writ, *Roy* answered that he knew nothing, and never had known anything, about the slave; that *Dreux* had bought the slave, but that he never gave *Dreux* any authority to do so; that if he, *Roy*, had the slave, he would deliver her up to the witness under the writ. This testimony was, in our opinion, improperly rejected; it did not contradict, nor vary the sheriff's return. These facts were independent of the return. The return was that no property of *Michel's* could be found in the parish of St. Bernard. That this return is made by the sheriff himself, is not inconsistent with the fact of the witness having acted under that writ as his deputy.

After a year had intervened, the plaintiff at last found the slave in New Orleans, and caused her to be seized and advertised for sale. This seizure was made, in October, 1844. The slave was sold, in December, 1844, to *Mrs. Michel.* Pending the seizure *Dreux* filed a third opposition, in which he alleges the slave to be his property, by virtue of a purchase from *Roy*, made in November, 1844. He alleges also the marshal's sale to *Roy*, and that *Roy's* title and his own cannot be treated as a nullity. He prayed that the slave might be delivered to him.

The court below was of opinion that the plaintiff should have instituted an hypothecary action, or an action of nullity. We think the court erred.

The testimony of the deputy sheriff is unimpeached. *Roy's* conduct and declarations on that occasion were a sufficient authorization to the plaintiff, so far as *Roy* was concerned, to seize the slave wherever it could be found. It was a waiver of the alleged necessity of the hypothecary action. This course was very natural on the part of *Roy*, who had been made, without his authorization, the purchaser of property incumbered to nearly its full value, and with the probable prospect of the expense and trouble of a litigation. On *Roy's* assurances the plaintiff acted, prosecuted her search for the property, and at last discovered and seized it. If *Roy* had himself interfered to arrest the sale and set aside the seizure upon this technical ground, we should have rejected his claim as inequitable. But does *Dreux* stand in a better position? Clearly not. He expressly claims as the vendee of *Roy*. But his purchase is made after the plaintiff's seizure. It was made, as we must believe, with a full knowledge of the seizure. It was made with full notice of the superior incumbrance in favor of the plaintiff, which is expressly recited in the sale to *Roy*, wherein *Dreux* undertook to act for himself. It is clear that *Dreux*, thus purchasing after the seizure, cannot maintain an opposition which his vendor would not have been permitted to maintain. In view of all the circumstances of the case we consider the interference of *Dreux* unlawful; and that it is time that this expensive and protracted contest should be closed.

MICHEL.
*v.*
HER HUSBAND.

MICHEL
*v.*
HER HUSBAND.

It is therefore decreed that the judgment of the Parish Court be reversed; that, on the opposition filed by *A. Dreux*, there be judgment in favor of *S. Duchemin*, wife of *Michel*; and that the appellant, *A. Dreux*, pay the costs of said opposition in the court below, and also of this appeal.

*Greiner*, for the appellant.    *Barthe* and *C. Janin*, for the opponent, *Dreux.*